UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Cecil Fox, | ) C/A No. 3:06-3439-TLW-JRM |
| Plaintiff, | ) |
| vs. | ) |
| Robert Ward; Linda Martin; George Hagan; Jon Ozmint; John Pate; Monica Counts; and Doris Poole, | ) Report and Recommendation |
| Defendants. | ) |

The plaintiff, Cecil Fox (Plaintiff), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983.[1] Plaintiff, who seeks monetary damages, alleges cruel and unusual punishment, denial of due process, and violation of equal protection laws. The complaint, which names South Carolina Department of Corrections (SCDC) employees as defendants[2], should be dismissed for failure to state a claim upon which relief may be granted.

Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; and the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996). This review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v.

---

[1] Pursuant to the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

[2] Title 28 U.S.C. § 1915A (a) provides that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."

Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Md. House of Corr., 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).

The complaint herein has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit.  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious."  § 1915(e)(2)(B)(i), (ii).  A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact."  Denton v. Hernandez, 504 U.S. at 31.  Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte.*  Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995).

This Court is required to liberally construe *pro se* documents, Estelle v. Gamble, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, Hughes v. Rowe, 449 U.S. 5, 9 (1980) (*per curiam).*  Even under this less stringent standard, however, the *pro se* complaint is subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not

mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  Weller v. Dep't of Soc. Servs., 901 F.2d 387,  (4th Cir. 1990).

## Background

Plaintiff, an inmate a Tyger River Correctional Institution (TRCI), claims: (1) he has been held in administrative segregation despite the expiration of his disciplinary detention, (2) that he cannot enjoy appropriate visitation privileges, (3) that his custody classification is in error, (4) that he should be transferred to a Level III institution, and (5) indifference to his medical and safety needs.

Plaintiff states that he was "convicted" of hostage taking and possession of a weapon at the Allendale Correctional Institution (ACI) in July, 2004.  As a result, Plaintiff was placed in "lock-up" for a period of 360 days and lost 1,385 days of good time credit.  Plaintiff alleges he has remained in administrative segregation despite the expiration of his disciplinary detention in July, 2005.  Plaintiff filed a Step 1 Grievance at ACI on August 22, 2005, requesting release from administrative segregation and transfer to an appropriate (Level III) institution.  ACI Warden, George Hagen, denied Plaintiff's grievance and further stated that, due to the seriousness of plaintiff's convictions, he would not be released to general population at ACI and a transfer to a Level III institution would be recommended. Plaintiff did not appeal Warden Hagen's decision, however, when no transfer was forthcoming, Plaintiff filed a second Step 1 Grievance on October 23, 2005.  Plaintiff again requested a transfer to a Level III institution, however, the Step 1 Grievance was returned to the Plaintiff on October 24, 2005, as a "non-grievable issue."

Plaintiff states his current custody classification is erroneous and requests a transfer

to the Broad River Correctional Institution (BRCI), a Level III facility, so that he may be closer to his family for visitation. In addition, plaintiff states that his health is compromised due to Hepatitis "C" treatments which "had a damaging effect", and that he has concerns for his personal safety. Plaintiff indicates that he has pending grievances at SCDC and at ACI. In addition, Plaintiff claims to have "raised said above issues" at his current facility, TRCI, and that "their decision is pending."

## Discussion

The focus of Plaintiff's complaint appears to hinge on his desire to be transferred to BRCI, a Level III facility, so that he may be closer to his family for visitation. Plaintiff also indicates that he should have been granted a "down grade" in custody status in July, 2005. However, due to the seriousness of Plaintiff's disciplinary history, he has remained in "restrictive custody" despite the expiration of his disciplinary detention. As discussed below, any § 1983 claims Plaintiff may allege as a result of the Defendants failure to transfer Plaintiff to a Level III institution (where he could enjoy family visitation), release Plaintiff from administrative/disciplinary segregation, and provide a more favorable custody classification must fail because such actions do not implicate a protected liberty interest.

Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. Wolff v. McDonell, 418 U.S. 539, 558-562 (1974). There is no constitutional right for a state or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. See Olim v. Wakinekona, 461 U.S. 238 (1983); and Ange v. Paderick, 521 F.2d 1066 (4th Cir. 1975), Thus, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and

are not subject to review *unless* state or federal law places limitations on official discretion. Hayes v. Thompson, 726 F.2d 1015, 1016-1017 & n.1 (4th Cir. 1984)(collecting cases).

Cases previously decided in this judicial district make it clear that South Carolina law confers no protected liberty interest upon inmates of the SCDC from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See, e.g.*, Keeler v. Pea, 782 F. Supp. 42, 43-44, (D.S.C. 1992), (*citing* Meachum v. Fano, 427 U.S. 215 (1976)). *See also* Vice v. Harvey, 458 F. Supp. 1031, 1034 (D.S.C. 1978); and Brown v. Evatt, 322 S.C. 189, 470 S.E.2d 848 (1996)(South Carolina Supreme Court held that neither state statutes creating/defining SCDC's powers nor SCDC's operational classification regulations created a liberty interest in security or custody classifications). In fact, it is well settled that the placement of inmates into administrative segregation units is a valid means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." Jackson v. Bostick, 760 F. Supp. 524, 528 (D.Md. 1991). *See also* Hewitt v. Helms, 459 U.S. 460, 468 (1983)("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");[3] Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995)(prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"), *rehearing denied*, 75 F.3d 448 (9th Cir. 1995), *cert. denied*, County of Kern v. Anderson, 516 U.S. 916

---

[3]

Unrelated portions of the holding in Hewitt v. Helms have been superannuated by later case law. This portion of the holding in Hewitt v. Helms has not been superannuated by later case law.

5

(1995); and Montanye v. Haymes, 427 U.S. 236, 242 (1976)(if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight").

Since the Plaintiff was committed by a Court of General Sessions to the custody of the SCDC, the choices of where and how the Plaintiff is to be confined are to be determined by the SCDC. Although the Plaintiff seeks a transfer to the BRCI and a more favorable custody classification, Defendants' classification of Plaintiff and institutional placement have not violated his constitutional rights. See Wolff v. McDonnell, 418 U.S. at 558-562; and Mann v. Leeke, 73 F.R.D. 264, 265-267 & n. 6 (D.S.C. 1974), *affirmed*, 551 F.2d 307 (4th Cir. 1977) [Table]. *See also* Cooper v. Riddle, 540 F.2d 731, 732 (4th Cir. 1976)(federal courts are not "to assume the role of super wardens of state penal institutions").

In regards to visitation privileges, "[n]either convicted prisoners nor their family members have an inherent constitutional right to visitation" because "[a]n inability to receive visitors is not atypical and unusually harsh compared to the ordinary circumstances contemplated by a prison sentence." Africa v. Vaughn, 1996 WESTLAW® 65445 at *1 (E.D.Pa.1996)(collecting cases). *See also* Sandin v. Conner, 515 U.S. 472, 483 (1995); Ozolina v. Durant, 1996 WESTLAW® 82481 at *1 (E.D.Pa. 1996)(under Sandin, "there is no right to visitation protected by the Due Process Clause"); *cf.* Byrd v. Pittman, 1995 WESTLAW® 434453 (D.D.C., July 1995)(no constitutional right to visitation at Lorton Reformatory [District of Columbia's Prison] because denial of visitation does not concern a protected liberty interest, and revocation of visitation will not affect duration of plaintiff's sentence); and Mayo v. Lane, 867 F.2d 374, 375 (7th Cir. 1989)("Prison necessarily disrupts

the normal pattern of familial association, so lawful imprisonment can hardly be thought a deprivation of the right of relatives to associate with the imprisoned criminal." ) Thus, Plaintiff's claim that he does not have appropriate visitation must likewise fail.

Plaintiff's complaint also addresses Defendants' alleged indifference to his medical needs and personal safety. While such claims may be appropriate under § 1983, a prisoner must utilize available prison administrative remedies prior to filing such an action. *See* 42 U.S.C.A. §1997e. In order to properly exhaust the inmate grievance system, an inmate must initially make an effort to informally resolve the problem. If the grievance cannot be informally handled, the inmate must complete a Form 10-5, Step 1, grievance form within 15 days of the alleged incident. The Warden will respond to the grievance in writing no later than 40 days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, the inmate may file an appeal of his Step 1 grievance by filing a Form 10-5a, Step 2 grievance, with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official will have 60 days to render a final decision on the Step 2 grievance. While Plaintiff states that he has forwarded inmate correspondence to various SCDC employees regarding the issues of indifference to medical and personal safety needs, he does not indicate that the formal "Step 1/Step 2" grievance has been initiated. Thus, any possible claims of deliberate indifference to Plaintiff's medical or safety needs are not ripe for Federal Court review at this time.

To the extent plaintiff requests damages for his loss of good time credits (for the July, 2004, institutional offense conviction of hostage-taking and possession of a weapon), his action is not cognizable under § 1983. In Heck v. Humphrey, 512 U.S. 477, 487 (1994), the United States Supreme Court held that a state prisoner's claim for damages is not cognizable

7

under § 1983 where success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. This ruling was subsequently extended to a prisoner's claim for damages regarding loss of good time credits in Edwards v. Balisok, 520 U.S. 641 (1997). While Heck does not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions, in situations such as Plaintiff's, where the administrative action affected credits toward release based on good time served, Heck bars the § 1983 suit. *See* Muhammad v. Close, 540 U.S. 749, 751 (2004)("Heck's requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence.") Since Heck applies in the instant circumstance and Plaintiff has not shown that his institutional conviction and sentence have been invalidated, he is prohibited from bringing a § 1983 suit for damages based on loss of good time credits.

      A more appropriate vehicle for challenging Plaintiff's loss of good time credits lies in an action for habeas relief. *See* Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.") However, a District Court cannot hear a prisoner's challenge of a disciplinary conviction and sentence until state remedies have been fully exhausted. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-91 (1973); Matthews v. Evatt, 105 F.3d 907, 910-911 (4th Cir. 1997)("To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court.")

In order to fully exhaust state court remedies, a habeas petitioner must first utilize his prison administrative remedies, as outlined above.  However, in addition to filing Step 1 and Step 2 grievances, the prisoner must also file an appeal with the Administrative Law Court (ALC) in compliance with S.C. Code Annotated §1-23-610, known as the Administrative Procedures Act (APA), and Al-Shabazz v. S.C., 527 S.E.2d 742, 750 (S.C. 2000)(inmate may seek review of Department's final decision in an administrative matter under the APA).  If the ALC denies a prisoner's appeal, he must further appeal that decision.  Since the SCDC is a single director agency subject to S.C. Code Ann. § 1-23-610(B), appeals of SCDC final decisions go to the ALC.   ALC appeals are then heard by a state's higher court.[4]  Once the appeal to the higher court has concluded, the prisoner may file a petition in the District Court for the District of South Carolina.  However, in the instant action, Plaintiff does not allege satisfaction of the exhaustion requirements of 42 U.S.C.A. 1997e.  Therefore, Plaintiff's attack on good time credits is subject to summary dismissal for failure to exhaust state remedies.

### Recommendation

Accordingly, it is recommended that the District Court dismiss the complaint in the above-captioned case *without prejudice* and without issuance and service of process. *See* Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Brown v. Briscoe, 998 F.2d 201, 202-204 & n. * (4th Cir. 1993); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); 28 U.S.C. § 1915(e)(2)(B); and

---

[4] Based on a recent amendment of S.C. Code Ann. § 9-21-70 (as amended by Act No. 387 of 2006, effective July 1, 2006), a claimant's appeal of a final ALC decision must go to the Court of Appeals pursuant to S.C. Code Section 1-23-380 and the South Carolina Appellate Court Rules.


28 U.S.C. § 1915A [as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal]. The plaintiff's attention is directed to the important notice on the next page.

                                        Respectfully Submitted,

                                        s/Joseph R. McCrorey
                                        United Stated Magistrate Judge

December 28, 2006
Columbia, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).